IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMY WARD,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

3:13-cv-00055-MA

OPINION AND ORDER

BRUCE W. BREWER
P.O. Box 421
West Linn, Oregon 97068

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

LISA GOLDOFTAS
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, Washington 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Amy Ward, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the applications for DIB and SSI on November 5, 2009, alleging disability due to bipolar disorder, anxiety, "violent behavior disorder," post-traumatic stress disorder (PTSD), personality disorder, migraines, stroke, and memory loss. Tr. 182. Her applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on November 3, 2011, at which Plaintiff was represented by counsel and testified. Vocational Expert (VE) Robert Gaffney was also present throughout the hearing and testified.

On January 27, 2012, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. After the

Appeals Council declined review of the ALJ's decision, Plaintiff timely filed a complaint in this Court.

## FACTUAL BACKGROUND

Born on November 29, 1974, Plaintiff was 27 years old on the alleged onset date of disability and 36 years old on the date of the hearing. Plaintiff reported completing most or all of her high school coursework, but did not receive a diploma, and has past relevant work as a Cashier, Commercial Cleaner, and Sales Clerk. Tr. 21, 178.

Plaintiff alleges her conditions became disabling on August 16, 2002. Tr. 178. Plaintiff testified about her limitations at the hearing. Tr. 38-59. Elaine Greif, Ph.D., conducted a Neuropsychological Screening and submitted a Medical Source Statement of Ability to do Work-Related Activities. Tr. 729-39.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national

3 - OPINION AND ORDER

economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined Plaintiff has not engaged in substantial gainful activity since the alleged onset date, August 16, 2002. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 12.

At Step Two, the ALJ found Plaintiff's borderline intellectual functioning, bipolar disorder, borderline personality disorder, PTSD, opiate dependence, cannabis abuse, headache complaints, and status post stroke were severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 12-13.

At Step Three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 25-26.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but limited Plaintiff to unskilled work involving routine tasks requiring no more than superficial interactions with others and no close cooperation or coordination; and further limited Plaintiff to performing mathematical calculations involving only addition and subtraction, and only in circumstances in which she can write equations to solve them. Tr. 15-21.

At Step Four, the ALJ found Plaintiff is unable to perform her past relevant work as a Cashier, Commercial Cleaner, or Sales Clerk. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 21.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including Laundry Sorter and Housekeeping/Room Cleaner. See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 22.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises two issues on review. First, Plaintiff argues the ALJ improperly discredited Plaintiff's testimony. Second, Plaintiff maintains the ALJ improperly partially rejected Dr. Greif's opinion.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or

5 - OPINION AND ORDER

detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. Plaintiff's Credibility

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen, 80 F.3d at 1281-82. Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding her subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's

6 - OPINION AND ORDER

complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified her short term memory problems cause her to immediately forget what she reads, fail to track conversation, and get lost frequently as a result of poor sense of direction. Tr. 40-41, 50. Plaintiff testified she has headaches every day as a result of a 2005 stroke. Tr. 41. Plaintiff testified the headaches are "terrible," but that she "can't take pain medication" because she is on anxiety medication. Tr. 58. As a result of the stroke, Plaintiff testified she could no longer operate the cash registers at work because she could not remember how they worked. Tr. 43. Plaintiff reported she can perform addition and subtraction if she is able to write the equation down, but not multiplication and division. Tr. 41. Aside from her headaches, however, Plaintiff reported she does not have any physical limitations. Tr. 57.

As to mental health, Plaintiff reported she has frequent nightmares as a result of her PTSD that interfere with her sleep. Tr. 44. In addition, as a result of her bipolar disorder, Plaintiff testified she cries for approximately two hours almost

every day, and that stress about her living situation usually triggers the crying spells. Tr. 45-46. Plaintiff additionally testified anxiety causes her to suffer increased heart rate, nausea, and light-headedness when she is in an area with a lot of people, such as a store. Tr. 47-48. Plaintiff reported she experiences such spells approximately once per year. Tr. 49. In addition, Plaintiff testified she has "[v]iolent behavior disorder," which causes her to become enraged when provoked. Tr. 54. Plaintiff reported she has become angry - although not violent - at the doctor's office and at work in the past. Tr. 54-55.

As to activities of daily living, Plaintiff reported she sends text messages, watches television, and cleans the house. Tr. 42. Plaintiff indicated she keeps the house "immaculate" because she has obsessive-compulsive disorder. Tr. 59.

The ALJ rejected Plaintiff's testimony because Plaintiff demonstrated drug-seeking behavior that reflected poorly on her credibility, endorsed symptoms that are disproportionate to objective and clinical findings, and did not put forth maximal effort on psychological testing. Tr. 17-20. I conclude these reasons, taken together, constitute clear and convincing reasons for discrediting Plaintiff's testimony.

Evidence of drug-seeking behavior is a proper basis for discrediting a claimant's subjective complaints. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001). Because the record

8 - OPINION AND ORDER

in this case is replete with evidence of drug-seeking behavior, the ALJ's rejection of Plaintiff's testimony on this basis is especially compelling. The record contains numerous instances of Plaintiff affirmatively seeking narcotic pain medication from health care providers. E.g. Tr. 227, 228, 233, 334, 417, 494, 498, 513, 520-21, 629, 652, 660. In many instances, Plaintiff refused non-narcotic treatments offered by health care providers in favor of demanding narcotics. Tr. 233, 417, 496-98, 513, 520, 629, 660. In some encounters, medical providers noted that Plaintiff became upset or uncooperative when she was denied narcotics or providers suggested she seek treatment for narcotics addiction. Tr. 417, 494-96, 498, 500, 520-21, 629, 660. Indeed, in light of the aggressiveness with which Plaintiff sought narcotic pain medication and Plaintiff's frequent refusal to undergo non-narcotic treatment, it is reasonable to question whether the full extent of Plaintiff's symptom complaints in the medical record are genuine or are indicative of attempts to obtain narcotic pain medication. The ALJ's citation of drug-seeking behavior, then, is a compelling reason, supported by ample evidence, to reject Plaintiff's symptom testimony.

The ALJ also cited Plaintiff's poor effort in testing as a reason to discredit her testimony. Notably, in her evaluation with Dr. Greif, "[m]emory skills could not be assessed validly due to impaired effort and this was judged associated at least in part

with psychological variables other than specific intention to look disabled, although the latter would not be ruled out." Tr. 731. Specifically, Plaintiff's effort was "inadequate" on the WMS-IV, a scale used to measure memory, as Plaintiff gave up quickly on questions and said the work was too difficult. Id. In addition, as the ALJ cited, although Plaintiff "worked on the MMPI-2 independently and calmly for over 2 ½ hours," unlike her effort on the memory testing, her MMPI-2 "profile was judged invalid . . . for interpretation due to extremely high F scale suggesting exaggerated report of unusual symptoms and of pathology." Id.

Although Dr. Greif suggested Plaintiff's poor effort might be caused at least in part by psychological factors, Dr. Greif expressly did not rule out the possibility that Plaintiff was attempting to appear more limited than she actually is. Moreover, it is notable that Plaintiff exhibited poor effort in memory testing, one of the areas in which Plaintiff alleged she was most disabled, while putting in greater effort on other tests. As such, the ALJ reasonably cited Plaintiff's poor effort in psychological testing as a reason to discredit her testimony.

Finally, the ALJ appropriately cited inconsistency between Plaintiff's allegations and clinical findings to discredit her testimony. Despite Plaintiff's allegations of significant memory impairments, memory problems are relatively sporadically mentioned throughout the extensive medical record. Tr. 246 (8/31/09), 584

(4/24/09; short term memory loss secondary to an "aneurysm"); 628 (5/13/11); 635 (5/26/11). More to the point, however, there are several references to Plaintiff demonstrating no memory deficits. Tr. 424 (11/24/08), 443 (10/4/10), 449 (11/8/10), 459 (12/26/10), 466 (12/29/10), 505 (4/26/11), 549 (6/17/11). These references to normal memory function are manifestly inconsistent with Plaintiff's allegations at the hearing of longstanding, very serious memory problems. Therefore, the ALJ appropriately cited inconsistency between Plaintiff's allegations and clinical findings as a compelling reason to discredit Plaintiff's testimony.

In sum, I conclude the above reasons are clear and convincing reasons to discredit Plaintiff's allegations. The ALJ did not err in his consideration of Plaintiff's testimony.

## II. Medical Testimony

Plaintiff next argues the ALJ impermissibly discredited Dr. Greif's opinion. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

11 - OPINION AND ORDER

supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

The ALJ partially credited Dr. Greif's opinion, accepting Dr. Greif's findings as to Plaintiff's ability to carry out and understand instructions, but partially rejecting the severity of Dr. Greif's findings as to Plaintiff's ability to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 21. The ALJ found that Plaintiff's limitations in this respect were adequately accommodated by the RFC's limitation of Plaintiff to "unskilled work involving routine tasks requiring no more than superficial interaction with others and no close cooperation or coordination." Tr. 15. As an uncontradicted evaluative opinion, the ALJ was required to provide clear and convincing reasons for rejecting Dr. Greif's opinion. Lester, 81 F.3d at 830-31.

Dr. Greif noted that Plaintiff was markedly limited in her abilities to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 738. Additionally, Dr. Greif found Plaintiff moderately limited in her abilities to interact appropriately with supervisors and co-workers and make judgments on simple work-related decisions. Tr. 737-38. As to Plaintiff's abilities to carry out instructions and make work-related judgments, Dr. Greif

12 - OPINION AND ORDER

wrote, "She understands. Memory may be impaired somewhat, but, importantly, psychological factors impair judgment, behavioral control, [and] ability to persist on work." Tr. 737 (emphasis in original). As to Plaintiff's abilities to interact with others and respond appropriately to usual work situations, Dr. Greif wrote "low frustration tolerance, doesn't persist. In my setting, as a person of authority, claimant had trouble [and] showed variability in cooperation." Tr. 738.

The ALJ partially rejected Dr. Greif's opinion because the medical evidence as a whole, as well as Plaintiff's activities of daily living, supported the limitations in the RFC. Tr. 21. At the outset, I note Dr. Greif's opined limitations are largely - if perhaps completely - accommodated by the RFC. The limitations to only superficial interaction with others, including no close cooperation or coordination, are significant limitations that directly address Dr. Greif's concerns about Plaintiff's ability to interact with, and control her behavior in relation to, others at work.

With respect to Dr. Greif's opinion as to Plaintiff's ability to make work-related judgments, respond to usual work situations, and persist in work, I find the ALJ's limitation of Plaintiff to only unskilled, routine work accommodates many, if not all, of Dr. Greif's opined limitations. Nonetheless, to the extent Dr. Greif opined that Plaintiff could not complete unskilled, routine work

13 - OPINION AND ORDER

even when her interaction with others was significantly limited, the ALJ reasonably found that such a limitation is inconsistent with Plaintiff's activities of daily living and the medical record, including Dr. Greif's own examination. In Dr. Greif's examination, Plaintiff "worked on the MMPI-2 independently and calmly for over 2 ½ hours." Tr. 731. As to her activities of daily living, Plaintiff reported that she sends text messages, watches television, and cleans. Tr. 42. Asked what she can clean, Plaintiff answered "everything," and that her alleged obsessive compulsive disorder compels her to keep the house "immaculate[ly] clean." Tr. 42, 59.

While, as the ALJ acknowledged, these alleged activities of daily living are not especially extensive, the fact that Plaintiff testified she devotes a significant amount of time and energy to cleaning belies Dr. Greif's opinion that Plaintiff is unable to persist in work activities and make simple work-related judgments, especially considering the two jobs the ALJ found available to Plaintiff - Housekeeping/Room Cleaner and Laundry Sorter - are jobs that involve cleaning. Moreover, Plaintiff's ability to work on a personality questionnaire independently for two-and-one-half hours further undercuts Dr. Greif's opinion to the extent interpreted to indicate Plaintiff cannot persist in unskilled, routine work tasks that do not require more than superficial contact with others.

In sum, I conclude the RFC is largely consistent with Dr. Greif's opinion. To the extent Dr. Greif's opinion is interpreted to preclude Plaintiff from work involving the performance of unskilled, routine tasks with no more than superficial contact with others, I find that the ALJ cited clear and convincing reasons to partially discredit Dr. Greif's opinion. The ALJ appropriately weighed the medical testimony.

### CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this **27** day of March, 2014.

                                           Malcolm F. Marsh
                                           United States District Judge